UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| ROBERT BEAVERS, | : | CASE NO. 1:20-cv-00928 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 8] |
| vs. | : | |
| | : | |
| UHG LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Defendants attempted to collect consumer debt from Plaintiff Robert Beavers. Now, Beavers sues Defendants alleging their debt collection practices violated federal and Ohio law.[1]

Defendants move to dismiss[2] or alternatively compel arbitration and stay the proceedings. In support, Defendants argue that Plaintiff's claims are subject to mandatory arbitration under an arbitration agreement.[3] Plaintiff opposes, arguing the arbitration agreement does not cover his claims against Defendants.[4]

For the following reasons, the Court **DENIES** Defendants' motion to dismiss or compel arbitration and stay the proceedings.

---

[1] Doc. 1.
[2] Doc. 8.
[3] Docs. 8-1, 12.
[4] Doc. 11.

Case No. 1:20-cv-00928
GWIN, J.

I. **Background**

In September 2018, Plaintiff Beavers received a payday loan through non-party CashNetUSA.[5] With the loan, Beavers signed two contracts.[6] First, he signed a "Credit Services Contract" with CashNetUSA, who arranged for Plaintiff to receive a loan from a third-party lender.[7] Second, he signed a "Loan Agreement" with NCP Finance Ohio, LLC, a lender, who lent Plaintiff money.[8] Each contract contained a different arbitration agreement.[9]

In January 2019, Defendant UHG I bought Plaintiff's payday loan debt from CashNetUSA.[10] UGH then entered a contract with Defendant Capital Link Management, LLC ("Capital Link") to service Plaintiff's account.[11] In turn, Capital Link contracted Defendant Rothman Klein Mediation ("Rothman Klein") to do the same.[12] In February 2020, Plaintiff began receiving calls from Defendant Rothman Klein about his debt.[13]

Plaintiff sues Defendants, alleging Rothman Klein's collection tactics violate state and federal law.[14] Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6).[15] Alternatively, Defendants move to compel arbitration and stay the proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 3–4.[16] Defendants argue the "Arbitration Provision" in the Loan Agreement covers Plaintiff's claims against

---

[5] Doc. 1 at 7; Doc. 8-1 at 2.
[6] Doc. 8-2.
[7] *Id.* at 5.
[8] *Id.* at 23–24.
[9] *Id.* at 14, 30–34.
[10] Doc. 1 at 7; Doc. 8-1 at 3.
[11] *Id.*
[12] Doc. 8-1 at 3.
[13] Doc. 1 at 7.
[14] Doc. 1.
[15] Doc. 8.
[16] *Id.*

- 2 -

Case No. 1:20-cv-00928
GWIN, J.

Defendants.[17]  Plaintiff opposes and argues that Defendants are not parties to the Arbitration Provision and cannot compel Plaintiff to arbitrate his claims.[18]

## II. Discussion

Defendants move to dismiss under both 12(b)(1) and 12(b)(6). The present motion is more properly construed only as a motion to dismiss for failure to state a claim.[19]

When ruling on a motion to dismiss for a failure to state a claim, a court ordinarily relies only on the pleadings.[20] Otherwise, the court must convert the motion to dismiss to a summary judgment and "all parties must be given a reasonable opportunity to present all material pertinent to the motion."[21] "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."[22]

Defendants' motion to dismiss necessarily requires the Court examine extrinsic evidence, namely the Arbitration Provision in the Loan Agreement.[23] Defendants also attach and rely on declarations of Defendants UHG I and Capital Link's corporate officers and non-

---

[17] Docs. 8-1, 12.
[18] Doc. 11.
[19] *See Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014) ("Because a failure to pursue arbitration means that the [Plaintiff] has failed to state a claim under the CBA and the Settlement Agreement, [Defendant's] motion is more properly construed as a motion to dismiss under Rule 12(b)(6)."); *see also Knight v. Idea Buyer, LLC*, 723 Fed.Appx. 300, 301 (6th Cir. 2018) (unpublished) ("A motion to dismiss pursuant to an arbitration agreement should therefore be construed as a Rule 12(b)(6) motion even if it is mislabeled as Rule 12(b)(1) motion.") (citing *Teamsters*, 748 F.3d at 286).
[20] *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).
[21] *Id.*
[22] *Id.*
[23] Doc. 8-1.

Case No. 1:20-cv-00928
GWIN, J.

party CashNetUSA's employee. The Arbitration Provision and declarations were not attached to or referenced in the complaint and are not public records.

Rather than convert Defendants' motion to dismiss into a motion for summary judgment, the Court will deny the motion and consider the Arbitration Provision in the context of Defendants' alternative motion to compel arbitration and stay the proceedings.[24]

"[T]he Federal Arbitration Act [] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."[25] "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."[26] Courts "review the enforceability of an arbitration agreement according to the applicable state law of contract formation."[27] In this case, Ohio law applies.[28]

Defendants concede they are not signatories to the Loan Agreement Arbitration Provision they seek to enforce.[29] Instead, Defendants assert the Arbitration Provision covers Plaintiffs claims against them for two reasons. First, Defendants argue the Arbitration

---

[24] Doc. 8-1 at 10; Doc 12 at 14.
[25] *Hergenreder v. Bickford Senior Living Grp.*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3–4)).
[26] *Id.* (quoting *Javitch*, 315 F.3d at 624).
[27] *Id.* (quoting *Seawright v. Am. Gen. Gin. Servs., Inc.*, 407 F.3d 967, 972 (6th Cir. 2007) (citations omitted)).
[28] Doc. 8-2. ("This Note and Loan Agreement will be governed by the laws of the State of Ohio, including the Mortgage Loan Act, Ohio Revised Code Sections 1321.51 to 1321.60, except that the Federal Truth in Lending Disclosures are governed by the Truth in Lending Act and the Federal Reserve Board Regulation Z and the arbitration provision of this Note and Loan Agreement will be governed by the Federal Arbitration Act ("FAA").")
[29] Doc 12 at 3.

- 4 -

Case No. 1:20-cv-00928
GWIN, J.

Provision applies to the lender's "assigns" and that Defendant UHG I is an assign. Second, Defendants urge that non-signatories can enforce arbitration against a signatory through the doctrine of equitable estoppel. The Court considers each of these arguments.

### A. The Arbitration Provision's Applicability to Defendants

The Arbitration Provision starts, "[r]ead this arbitration provision carefully as it will have a substantial impact on how legal claims *you and we have against each other* are resolved."[30] The Loan Agreement provides "the words 'you' and 'your' mean the borrower who has signed it. The words 'we', 'us' and 'our' mean NCP Finance Ohio, LLC, the Lender[.]"[31]

Still, Defendants argue the Arbitration Provision applies to claims against them because there is a "Binding Effect; Survival; Severability" clause that reads, "[t]his Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties."[32] But this language does not change the definitions referenced above The Arbitration Provision determines "how legal claims [borrower Plaintiff Beavers] and [non-party NCP Finance] have against each other are resolved." It does not cover claims against others.[33]s

---

[30] Doc. 8-2 at 31. (capitalization changed) (emphasis added).
[31] *Id*. at 23.
[32] *Id*. at 34.
[33] The Arbitration Provision does require Plaintiff Beavers to arbitrate claims against NCP Finance's "employees, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities" and "other persons and entities if [Beavers] assert[s] a [c]laim against such other persons and entities in connection with a [c]laim [Beavers] assert[s] against [NCP Finance]." Doc. 8-2 at 31. Neither of those provisions apply in this case.

Case No. 1:20-cv-00928
GWIN, J.

### B. Equitable Estoppel

The Federal Arbitration Act "permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement."[34] Ohio courts have recognized two circumstances in which nonsignatories to an arbitration agreement can invoke equitable estoppel to compel arbitration against a signatory.[35] First, "where a signatory must rely on the terms of the written agreement in asserting claims against a nonsignatory."[36] Second, "where the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one of more signatories of the contract."[37]

This case involves neither of these circumstances. Plaintiff Beavers makes claims that Defendant Rothman Klein's debt collection practices violated federal and Ohio law and do not rely on the underlying Loan Agreement.[38] And Beavers does not allege signatory NCP Finance was involved in Rothman Klein's misconduct.[39] Thus, Defendants cannot rely on equitable estoppel to compel Plaintiff Beavers to arbitrate his claims against them.

### III. Conclusion

The Court **DENIES** Defendants' motion to dismiss and **DENIES** Defendants' alternative motion to compel arbitration and stay the proceedings. The Court finds that Plaintiff Beavers

---

[34] *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020).
[35] *I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 8 (Ohio Ct. App. 2004); *see also Liedtke v. Frank*, 437 F.Supp.2d 696, 698–99 (N.D. Ohio 2006); *Javitch*, 315 F.3d at 629.
[36] *I Sports*, 813 N.E.2d at 8; *see also Liedtke*, 437 F.Supp.2d at 699.
[37] *Id.*
[38] Doc. 1.
[39] *Id.*

Case No. 1:20-cv-00928
GWIN, J.

did not agree to arbitrate his claims against nonsignatory Defendants. And Defendants cannot rely on equitable estoppel to compel Beavers to arbitrate.

    IT IS SO ORDERED.

Dated: October 8, 2020            *s/    James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE